## Andrews *v.* Doe *ex. dem.* Wilkes.

By the act of 1824, a judgment is a lien on all the property of the defendant from the time it is entered up.

The lien created by the oldest judgment cannot be defeated by an elder levy of a junior judgment.

The docketing of the judgment first rendered in point of time, is notice to all junior judgment creditors and purchasers under it, of the lien of the oldest judgment.

Purchasers under an older judgment in the United States circuit court, will hold in preference to purchasers by virtue of a sale under a younger judgment in the state court, although the execution from the latter may have been first levied, and the property previously sold under it.

IN ERROR from the circuit court of the county of Yazoo.

Trial at the May term, 1841, before Hon. M. L. Fitch.

This was an action of ejectment for a lot of land in Yazoo city, brought by the defendant in error. The plaintiff in error, who was defendant below, demurred to the evidence, which was over-ruled, and judgment for the plaintiff below, that he recover, &c. The decision on the demurrer presents the only question in the case.

The material facts are these: the lot or the part claimed was owned by James H. Vance. On the 5th of November, 1838, judg-ment was recovered against him in the district court of the United States, by Huntington & Campbell. An alias fieri facias issued on the judgment the 6th of June, 1839, which was levied on the 1st of October on the lot, and on the 4th of November, 1839, it was sold by the marshal to the plaintiff Wilkes, who received a deed.

On the 19th of November, 1838, fourteen days after Huntington and Campbell had recovered judgment, John Merritt & Co. reco-vered a judgment against Vance in the circuit court of Yazoo county. A fieri facias issued thereon on the 16th of February, 1839, which was levied on the lot the 14th of March, and on

Andrews *v.* Doe *ex. dem.* Wilkes.

the 8th of May it was sold by the sheriff of Yazoo county to the defendant Andrews, who received a deed. The execution on the junior judgment was therefore first levied, and the sale by the sheriff under it took place six months prior to the sale by the marshal. The purchaser at sheriff's sale was in possession, and this action was brought by the purchaser at the marshal's sale to recover the lot.

Wilkinson and Miles, for plaintiffs in error.

The only point in this case is one of judgment *lien*. And we candidly confess, that the decisions, both of this country and England, have settled the doctrine pretty clearly in favor of the *senior* judgment creditor; and have sustained the purchaser's *title* derived under such judgment. See 12 Wheaton's Rep. 177; 3 Har. and McHen. Rep. 449–50; 2 San. Rep. 8, note K.; 1 Caine's Cases in Error, 69; 1 Peters U. S. Rep. 387; 1 Johns. Chan. Rep. 512; 4 Com. Dig. 246; 13 Johns. Rep. 463; 20 J. R. 49; 12 J. R. 429.

But this has always been where the claims of conflicting purchasers were derived from judgments recovered in the "same court;" or courts of the *same jurisdiction;* and where the final process was executed by the *same officer.* See the cases above cited.

We do not indulge the hope of being able to overturn a principle running with unbroken current through so many cases; and consequently do not feel disposed to argue contrary to a principle seemingly so well established, unless this court esteems its decision in the case of Michie *v.* The Planters' Bank, 4 How. Rep. 138, et seq., as governing and settling the question in the case at bar. The clear inference deducible from that opinion is, that the purchaser under the *first execution sale* that takes place, acquires a good title as against all the world. In support of the position taken by this court in the case of Michie *v.* The Planters' Bank, reference is made to the following cases: Sanford *v.* Roosa, 12 Johns. Rep. 162; 1 Low's Reports, 592; 4 Con. Rep. 461; 7 Con. Rep. 739; Gilpin's C. C. Rep. 57; 14 Serg. & Rawle's Rep. 261–2; Den. *v.* Hill, 1 Haywood's Rep. 72, 95; State *v.* Magniss, 1 Hay. Rep. 99; 3 Am. Digest, 359; Payne *v.* Drew, 4 East's Rep. Yelv. 12, Cro. Eliz. 797; Noy. 47; 1 Gold. 38; 3 Leon, 239; 4 Leon, 10; Co. Litt. 289, b; Law of Ex. 184, 186; Gibb. Law of Ex. 55.

Andrews *v.* Doe *ex. dem.* Wilkes.

If this court still adheres to its opinion in the case in 4 How. Rep. this cause is determined by it, and requires no further argument. But supposing the court has undergone a change of opinion on that point, we then address ourselves to the consideration of a question of much importance to the public, and on which this case must turn.

Where the executions emanated from courts of *different jurisdictions* and the final process is executed by *different officers,* then the execution which is *first levied,* and which *first sells* the property, conveys a good title to the purchaser, discharged from the *lien* of a *senior judgment.* See Judkins *v.* Jones, 4 Dev. and Batt. Rep. 456; Bald. C. C. Rep. 273, 284; 2 Peters' Digest, 269; Hagan *v.* Lucas, 10 Peters' Rep. 400.

The case of Thompson *v.* Phillips, Bald. C. C. Rep. 273, et seq. is directly in point, and settles the case at bar beyond doubt or cavil. That was an action of ejectment, one party claiming under a deed from the United States' marshal, the other under a deed from the sheriff of the county. The judgment in the United States' court was several years *older* than the judgment in the state court. The sheriff levied *first,* and sold the property. The marshal levied and re-sold the property. Held by the court, that the sheriff's *vendee* bought a good title, discharged from the *lien* of the *senior* judgment in the United States' court. The facts are *identical* with the facts of the case at bar, and the decision is directly in point. The case in 4 Batt. and Dev. Rep. 456, and the case in 10 Peters' Rep. 400, are strongly analogous to the present case, and seem, in our estimation, to settle the law of this case. See also 16 Serg. and Rawle, 410; 2 Rawle, 56; 1 Peters' Rep. 112, 113.

R. S. Holt for defendant in error.

The settled construction of the act of 1824 is, that a judgment in this state operates as a lien on all the property of the defendant from the time of its rendition. The "property of the defendant" is understood to mean, all the right, title and interest which the defendant had at the date of the judgment in or to personalty or realty; and the lien here given is understood to be a right vested in the plaintiff to subject to sale all that right, title and interest,

for the satisfaction of his debt. The record shows that, at the date of the judgment under which appellee claims, Vance held, or was seized of, the legal title to the disputed premises. This, therefore, was the title which the plaintiff in that judgment had a right by law to have sold; this was the interest of Vance which the marshal levied on and sold, and this, of course, was the title or interest purchased by appellee.

On the other hand, at the date of the judgment under which appellant purchased, Vance had in the disputed premises a title, subject to sale under, or incumbered by, the elder judgment. This, therefore, was the title or interest which the plaintiff in that judgment was entitled to have sold: which was levied on and sold by the sheriff, and which was purchased by appellant; the legal title subject to re-sale under the senior judgment.

This view of the subject is sustained by the highest authorities known to the profession. In support of it we cite 2 Saund. R. R. 8 R. Bald. C. C. R. 266, 273, 284, cited in 2 Pet. Dig. 269; 1 Pet. R. 387, 443; 12 Wheat. R. 179; 3 Har. & McH. 450; 1 J. C. R. 533; 13 J. R. 463, 533; 1 Caine's Cases in Er. 69; 1 Dallas, 481, 486; 4 do. 450.

The authorities cited from 1 Caine's Cases in Error, 1 Peters, 3 Har. & McHenry, and Bald. C. C. R., show it to be well settled, both in England and America, that a purchaser of land sold under a junior judgment, holds it subject to re-sale under the older judgment, and that his title is of course terminated by the sale under the latter.

The case cited from 12 Wheaton was decided by the Supreme Court of the United States, on a statute of the state of Missouri, which renders a judgment a lien on the land of the defendant from its date, as does ours. The facts of that case were identical with those of the cause now at bar, except that the suit was instituted by the purchaser under the younger judgment, against the purchaser under the senior judgment; the lot in controversy having, as in this case, been first sold under the younger judgment. The chief justice delivered the opinion of the court in favor of the purchaser under the senior judgment. He places judgment creditors on the same footing with other incumbrancers; declares that the eldest is to be the first satisfied, and that a purchaser under a

junior judgment takes a title defeasible by a subsequent sale under an elder judgment.

The case reported in 13 J. R. 463, presented identically the same facts as the one now under consideration. The judgment of the court was in favor of the purchaser under the elder judgment; the chief justice deciding that he acquired by his purchase a title paramount to that of the purchaser under the junior judgment.

In 1 J. C. R. 512, the judgments, under which the lands were sold, were both in favor of the same person. The plaintiff had the first sale made under his younger judgment, and then had the same land levied on, in the hands of the purchaser, and resold under the elder judgment.

The chancellor decided that the purchaser under the younger judgment held the land subject to resale under the elder. The other cases cited are equally decisive.

But it is insisted that this rule does not apply when one of the judgments is rendered in the federal, and the other in the state court. It is extremely difficult to perceive the propriety of the distinction here relied on. It can surely have no foundation in principle, and is wholly unsustained by authority.

The federal court is organized to administer the laws of the state in which it holds its session. And, *as a judgment is* "the awarding the judicial consequences which the law attaches to the facts," (Steph. on Pl.) the judgment of that court must be the same, on a given state of facts, as would be the judgment of a state court; otherwise, under the same code, the sentence or decree of the law would be different in different places and in different forums.

By the statute of this state, as we have seen, when the claim of a creditor has received the sanction of a court of competent jurisdiction, and been clothed with the form of a judgment, it is an essential and necessary part of that judgment, in law, that the creditor have execution of the property belonging to the debtor at the time of its rendition. This decree for execution is not expressed in full in our common law form of a judgment, but it is the legal meaning of that form; it is one of the "judicial consequences" of the fact of indebtedness, when that fact has been established by the adjudication of the court. Now if it is denied that this lien exists in favor of judgment creditors in the federal court in the

Andrews *v.* Doe *ex. dem.* Wilkes.

same manner, to the same extent, and with the same legal consequences as it does in favor of judgment creditors in the state courts, it must manifestly be contended that upon the same facts, the federal court renders a different judgment from that rendered by a state court, that the judicial consequences of those facts, the sentence of the same law, upon them, is different in the two courts, or that two courts administering the same laws pronounce different judgments on the same facts.

A similar law, in the state of Pennsylvania, has been decided to be a rule of title or property, and of course conclusive in its control of the action of the federal court in that state. Baldwin's C. C. R. 273, as cited in 2 Pet. Dig. 284.

In that case the controversy arose between purchasers of the same property under different judgments against the same defendant.

In that case, as in this, the eldest judgment was rendered in the federal court, and the youngest in the state court, and the decision was in favor of the purchaser under the junior judgment. But the court expressly rested its opinion on the doctrine established by the decisions of the supreme court of that state, that a purchaser of property under a junior judgment acquired in all cases a title discharged of the lien of a senior judgment. This was the rule of decision which had been settled upon in that state, in controversies between purchasers under different judgments in the state courts, and while the court disapproved of the rule upon principle, the learned judge felt bound to adopt it, in that case, as an undoubted rule of property.

In the case reported in 10 Peters' Reports, the court merely decided that if the sheriff first levied on property under a junior judgment in the state court, it could not be wrested from him by the marshal, under a senior judgment in the federal court. The reason given is, that it would lead to conflict and collision between the officers. This rule cannot of course prevent a senior judgment creditor from enforcing his lien on the property after it has passed from the hands of the officer acting under the junior judgment. The reason of the rule does not extend so far. No such conflict or collision would result. 1 Kent, 248; 6 Peters' Cond. Rep. 505; 1 Peters, 387, 443.

Andrews *v.* Doe *ex. dem.* Wilkes.

The case in 10 Peters was, whether property levied on, and in the hands of the marshal, could be taken out, &c.

G. S. Yerger, on the same side.

Two questions are presented by the record in this case:

1. Will a subsequent levy and sale of land under an elder judgment, vest the title, as against a purchaser under a younger judgment, but first executed ?

2. If it will, in the state courts, does the same rule apply to sales made under judgments in the federal courts?

The first question is settled beyond controversy. The lien given by the act of 1824 cannot be defeated by a subsequent sale, whether made by the party, or under a *junior* judgment. The *judgment*, in the language of the act, "binds the lands," and a sale under it necessarily vests the title from its rendition. This has been the uniform construction put on the statute of Westminster, 2, (vide 2 Inst. 394-5-6,) giving the elegit. 10 Viner's Abr. title Execution, Z. page 562; 1 Haywood, 94, 89; Peck's Rep. 34, 35, 50, 51, 52; 12 Wheat. Rep. 177; 1 Peters, 485-6; 2 Harris & Johnson, 72.

The act of 1824 is stronger in its language than the words of the statute giving the elegit, or the statute of Missouri, on which the decision in 12 Wheaton, 177, was predicated. The words are, "that in all cases the property of the defendant shall be bound and liable to any judgment that may be entered up, from the time of entering such judgment." Language could not be stronger, and in the case of Barney *v.* Boyet, 1 How. 40, it was held, that this statute gave a lien on all the property of the defendant from the time it was entered up.

But it is contended that this statute does not apply to judgments rendered in the federal court, and that a sale of land made under a junior state judgment vests the title, as against a subsequent sale under an elder judgment of the federal court.

If the federal court judgment is a lien from its rendition, it is manifest that a sale under it passes the title as against subsequent incumbrances, however created. The cases before cited prove this beyond question. If it be a lien from its rendition, the effect of the judgment must be the same, whether the opposing title be

Andrews *v.* Doe *ex dem.* Wilkes.

derived directly from the debtor, or from the sheriff under a younger judgment. Like the elegit, it displaces all posterior incumbrances. The only question, then, is, whether the judgment of the federal court is a lien from its rendition; and if it is not, from what time is it a lien?

Upon this question it would seem there cannot be a doubt. There is no act of congress giving a lien to judgments in the state courts, and yet it is believed in every state where the local law gives the lien, it is applied to judgments in the federal courts. Without resorting to other particular reasons which have been given, it is sufficient to say, it has been so held wherever the question has been raised.

The case of Thompson *v.* Phillips, 1 Baldwin, 246, is directly in point. The law of Pennsylvania regulating and limiting the lien of judgments, was held to be applicable to the judgments in the federal courts.

So decided in New York and Ohio. 1 Kent's Com. 247–8, note, where the cases are referred to, and they were assumed as the law in 1 Peters, 386, 485.

An act of the legislature of Virginia, limiting and regulating the proceedings, &c. on judgments, was held to be applicable to judgments rendered in the circuit court of the United States. Ross & King *v.* Duval, 13 Peters, 45; 4 Peters, 127.

The above cases are decisive of the question, because congress undoubtedly has power by the constitution to make laws for carrying into effect the judgments of the federal court, 10 Wheaton, 51. And the 14th section of the judiciary act of U. States, 1789, ch. 20, authorizes the courts of the United States to issue writs of execution upon which they have rendered. (Ib.) The judgment being a lien, the execution when it is executed on land, necessarily relates to the judgment, and passes the title.

But it is thought the case in 10 Peters decides differently. It does not. That was a case of personal property; it was liable to be seized under either a younger or older judgment; the officer was obliged to obey the writ; he could not tell whether the elder execution was satisfied or not, or whether the lien was relinquished; the elder judgment or execution did not divest the property; and the question decided, that in cases of personal property,

when legally levied on, the levy vested a special property; that the goods were then in the custody of the law, and whilst there, could not be disturbed or taken by another writ. When the levy was disposed of, and the property in the hands of individuals, the question of lien and priority could afterwards arise. It had long been settled that property *attached,* and in the hands of an officer, could not be attached by process in the hands of another officer. In the case of lands, there is no special *property* vested by the levy. If the law gave the *elder judgment,* and not the execution, whether rendered in the circuit court of the United States or a state court, a lien, a sale under that elder judgment will pass the title. If, however, the property is first levied on by the marshal, under a junior judgment, it could not, whilst in his hands, be taken therefrom by the sheriff, although the latter held the elder judgment, because for aught that appeared the lien of the latter was discharged, or released, or waived. His levy was therefore postponed or suspended until the former was disposed of; then he could levy, and the right be tried.

Mr. Chief Justice SHARKEY stated the case, and delivered the opinion of the court.

The question is, whether a prior sale under a junior judgment, destroys the lien of the elder judgment. It is freely conceded by counsel, that as a general rule it does not, but that this case forms an exception, inasmuch as the liens accrued under different jurisdictions. But as the whole question is fairly before the court for the first time, it is proper that it should be judicially settled.

The act of 1824 declares "that in all cases the property of the defendant shall be bound and liable to any judgment that may be entered up, from the time of entering such judgment." How. and Hut. Dig. 621. This is emphatically a general lien on all property in favor of the plaintiff. A lien is a right given by law to have a debt satisfied out of a particular thing. It may originate by contract or by operation of law, and in either case the effect is the same. The property being bound and liable to satisfy the judgment, it was as much a lien as though it had been created by the act of the parties. It was a right given by law to have the debt satisfied out of any or all of the defendant's property.

Andrews .*v.* Doe *ex dem.* Wilkes.

We regard it as a well settled principle, that a lien fairly acquired, cannot be destroyed in favor of one having a notice of that lien, unless it be by some act of the party in whose favor it exists. The courts cannot divest it, and much less can the ministerial officers of the law do so. If they could do so it would be but a lien *sub modo,* whereas the law annexes no qualification. The courts have not the power of engrafting conditions on statutes which in themselves contain none. It is true that courts may look to the intention of the legislature and the design of a statute, and may therefore construe it according to its spirit, although it may in some measure seem to conflict with the letter of the statute. But in this case there can be no room for doubt; the intention is plainly indicated by the language used. We can neither add to, nor qualify the law. The judgment is not only a lien, but it is a lien of record, which is notice to every one. On what principle is it, then, that such a lien could be divested in favor of one who knew of its existence. He can have no superior right to urge, not even an equity to set up against it; he purchases with knowledge of the prior lien, and it is to be supposed that he gives what an incumbered property is worth. Having purchased subject to an incumbrance, he may if he chooses extinguish that incumbrance, and make his title perfect. The instance of a mortgage lien is a familiar one. If the junior mortgagee foreclose his mortgage, he does not thereby destroy the lien of the prior mortgage, and the purchaser under the junior mortgage holds subject to the prior lien, unless it be in cases where there is an implied assent of the prior mortgagee, but this is an act of his own. There can be no difference in principle between a mortgage and a statutory lien. The one is as binding as the other; and I can see no reason for holding one to be discharged by an act which will not affect the other. Indeed in the case of a mortgage, the solemn judgment of the court decreeing the land to be sold will not divest the lien. The lien in this case stands, if possible, on higher grounds; it accrued by the solemn judgment of a court of competent jurisdiction, and on what principle is it that a mere ministerial officer, by matter in *pais,* can overreach such an incumbrance by an act of his without the assent and often without the knowledge of the prior judgment creditor. A priority of lien entitles the holder to priority of satisfaction,

Andrews *v.* Doe *ex dem.* Wilkes.

and the only exception which this rule admits of, when the liens are of record, must arise out of the party holding the lien.

We are aware that according to the course of the decisions in England, and also in some of the states of this Union, a sale of chattels under a junior execution has been held to pass title, yet such cases are not analogous to the present. By the common law, lands could not be taken under execution at the suit of a subject, the goods and chattels alone being liable, and they were considered as bound from the teste of the execution. The executions always bore teste of the preceding term, and it was considered inexpedient that property should be bound by a writ before it had in reality emanated, but which by a fiction related back to the preceding term. This was remedied by the statute of 29 Car. 2, c. 3, by which it was declared that the execution should only bind the goods and chattels from the time it was delivered to the sheriff, who was required to indorse on it the time when received. Under the common law it is scarcely probable that the question of priority of lien produced any difficulty, as executions which bore teste generally of a preceding term were considered as equal liens; but under the statute the decisions have been numerous on the point, and it has generally been held that he who first began to execute acquired a priority, at least so far as to protect the sheriff's vendee. The decisions are based upon two considerations. 1. The courts held that it was bad policy to interrupt the sales made by sheriffs, as that would deter purchasers, and thus innocent persons would often suffer. 2. The sheriff was required to levy under the first execution which he received, and if he failed to do so, the aggrieved party had his remedy against him, and this was considered an indemnity. It was undoubtedly policy that those sales should be upheld, because as the property was only bound from the delivery of the writ to the sheriff, which was purely a matter in *pais*, purchasers could have no notice of a prior lien, and hence persons buying in good faith, under a different rule of decision, would have been the sufferers. With such impending risks, it was not to be expected that property would sell for its value. This would operate prejudicially to both debtor and creditor; hence the courts yielded to policy, and they had an additional reason for

doing so, because of the recourse which the injured party had against the sheriff.

But unless we subvert the uniform principle that whatever is of record is notice to every person, such considerations can have no weight here. There can be no policy in protecting a purchaser against an incumbrance of which he had notice, because he is not likely to give more than the property is worth, subject to the incumbrance. There can be no danger of an injury to purchasers, as every one must know what he is buying. No one would be deterred from buying, as they might be, if uninformed as to incumbrances. The purchaser under a decree to foreclose a junior mortgage, takes the property subject to the elder mortgage, because he is a purchaser with notice, the prior mortgage being a matter of record of which he is bound to take notice. So it is with purchasers at sheriff's sale. The judgment is a general lien of record, of which the purchaser is bound to take notice. This is the principal difference between judgment liens and execution liens; the one is matter of record, and the other is matter in *pais*. But this is not all. The statute making a judgment a lien, does not require the sheriff to make the first levy under the oldest judgment, and by removing the lien, the party would, in many cases, be left without any indemnity; hence we conclude that on principle there can be no doubt about recognizing the lien of the elder judgment.

The question here presented is not a new one. The most approved adjudged cases are in conformity with what we have said. The case of Rankin & Schatzell *v.* Scott, 12 Wheaton 177, cannot in any feature be distinguished from the present case. It arose under a law of Missouri, making judgments a lien. The property was first sold under the junior judgment, but the purchaser at the subsequent sale under the older judgment prevailed. The distinction between execution liens on personal property and judgment liens on land, was taken by Chief Justice Marshall, and he remarked that there was no analogy, because one was matter of record and the other not. The case of Rankin *v.* Scott was acknowledged to be the law by Judge Baldwin, in the case of Thomson *v.* Phillips, tried in Pennsylvania, where a judgment

48*

Andrews *v.* Doe *ex dem.* Wilkes.

is made a lien upon land, and yet he felt himself bound to conform to state decisions. The judge declares that if the question had been open in that state, he would have followed the case of Rankin *v.* Scott. See 1 Baldwin's Rep. 246.

The same doctrine is also explicitly declared by Judge Story, in the case of Conrad *v.* The Atlantic Insurance company, 1 Peters, 443. He says, that a general lien on land by judgment does not *per se* constitute a right of property, but it confers a right to levy to the exclusion of other adverse interests subsequently acquired. And when the levy is made, the title relates back to the judgment, and cuts out intermediate incumbrances. Subject to this the debtor has power to sell, or "it may be levied upon by any other creditor, who is entitled to hold it against every other person except such judgment creditor, and even against him, unless he consummates his title by a levy on the land under the judgment. In that event the prior levy is as to him void, and the creditor loses all right under it."

This is also the rule in New York, and we find no decisions to the contrary. The case referred to in 3 Murphey's Rep. 43, was decided on different grounds. The elegit is in force in North Carolina, but none of the contending parties had proceeded in that way. The statute of Geo. II. which rendered lands liable for debts in the colonies, only made them liable as chattels, unless the party should choose to proceed by elegit. The executions had been all delivered to the sheriff on the same day, and they were all levied on the land. The court did not, as they had proceeded by *fieri facias*, consider the land bound by the judgment, but considered it bound as chattels, by the delivery of the writ to the sheriff, and as there was no priority of lien, the money was divided in proportion to the demands.

The only remaining question, and the one on which counsel mainly rely, is, whether the rule which we have laid down is the true one where the lien accrues under the judgments of courts of different jurisdictions, one of these judgments being in the district court of the United States, and the other in a circuit court of the state. It will scarcely be expected that we should undertake to prove that the same law, in all things except on points of prac-

Andrews *v.* Doe *ex dcm.* Wilkes.

tice, prevails in both courts; this would be supererrogation.   The United States, as a government, has no municipal law except the constitution and acts of congress.   Even the supreme court of the United States bases its decisions on the laws of the state from which the case was taken.   The same law, then, operating in both courts, how can there be a difference in the character of the lien?   We are at a loss to perceive any ground for the distinction taken.   It is evident that a judgment in the United States court is as much a lien as the judgment of a state court; and the judgments in that court being matters of record, which parties are as much bound to notice as they are judgments of the state courts, it would follow that a purchaser at sheriff's sale under a younger judgment, would be a purchaser with notice of the older judgment in the United States court.   But it is said that a conflict of jurisdictions might be the consequence of allowing a re-sale of property which had previously been sold by authority from either of the courts.   But this cannot be.   It is the most effectual way to prevent a conflict of jurisdictions.   We admit the lien created by their judgments; they must admit the lien created by ours, because under our law both liens originate, and the effective operation of the lien being admitted, no difficulty can ever arise in settling the rights of parties, unless indeed the judgments should have been rendered so nearly at the same time as to make it difficult to ascertain which was the oldest.   And the same difficulty might occur as between our state courts; but this cannot be said to be a conflict of jurisdiction.

The case cited from Dev. & Bat. Rep. furnishes no authority for the ground taken by counsel.   The contest was between the sheriff and marshal, the one having levied on property which the other claimed to levy under a prior right; and the court decided that after a levy had been made, the property could not be taken from the one officer by the other, because such a course might produce a conflict of jurisdictions.   Under our law even such a question as that cannot very well arise, since a sale under the younger judgment does not divest the older lien, and the property may be again sold; but it was not so in North Carolina, the property being bound from the delivery of the writ to the sheriff.

Andrews *v.* Doe *ex dem.* Wilkes.

On neither of the grounds taken, therefore, do we think the judgment can be reversed.

The case of Michie *v.* The Planters Bank, 4 Howard, 130, has been cited for the plaintiff in error. In the decision of that case, the question here presented was intentionally avoided. We expected that it would come up, and did not wish to make a premature decision. We recognize in this decision what was settled in that, to wit: that a prior lien may be postponed by the act of the party.

The judgment must be affirmed.